# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cr. ID. No.  1511007472A and |
| | ) | 1511007472B |
| | ) | |
| ISAIAH PALMER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: November 5, 2018
Decided: January 31, 2019

# COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED

John S. Taylor, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Eugene J. Maurer, Jr., Esquire, 1201-A King Street, Wilmington, Delaware 19801, Attorney for Defendant Isaiah Palmer.

PARKER, Commissioner

This 31st day of January, 2019, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court that:

## BACKGROUND AND PROCEDURAL HISTORY

1.    On December 21, 2015, Defendant Isaiah Palmer was indicted on charges of two counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), one count of Possession of a Firearm by a Person Prohibited ("PFBPP"), one count of Possession of Ammunition by a Person Prohibited ("PABPP"), Drug Dealing in a Tier 4 quantity and Possession of a Controlled Substance in a Tier 5 quantity.

2.    On March 11, 2016, Palmer filed a Motion to Suppress Evidence. The court denied the motion.[1]

3.    After the denial of the suppression motion, the case proceeded to trial. Prior to jury selection, Palmer requested and was granted the severance of the PFBPP and PABPP charges from the remainder of the case. The "A" case went to a jury and the "B" case (PFBPP and PABPP) was a simultaneous bench trial.

4.    The jury was selected on July 6, 2016. Following a two-day trial, the jury found Palmer guilty of Possession of a Controlled Substance in a Tier 5 quantity and PFDCF. The jury found Palmer not guilty of Drug Dealing in a Tier 4 quantity

---

[1] *State v. Palmer*, 2016 WL 2604692 (Del.Super.).

1

and the related PFDCF charge. The Superior Court found Palmer guilty of the "B" counts of PFBPP and PABPP.

5. Prior to sentencing the State moved to declare Palmer a habitual offender.[2] Following a pre-sentence investigation, on September 16, 2016, the Superior Court declared Palmer a habitual offender pursuant to 11 *Del.C.* § 4214(c).

6. The Superior Court sentenced Palmer to a total unsuspended sentence of 42 years at Level V incarceration followed by probation.

7. Palmer filed a direct appeal to the Delaware Supreme Court. On July 7, 2017, the Delaware Supreme Court determined that the appeal was without merit, upheld the denial of his suppression motion, and affirmed the judgment of the Superior Court.[3]

## FACTS

8. During the second week of October 2015, a confidential informant informed officers from the Wilmington Police Department that a residence located at 311 West 29th Street in Wilmington, Delaware was used as a "stash house" for weapons.[4] Based on the tip, the officers conducted surveillance of the residence and observed a high frequency of activity coming from the residence with multiple

---

[2] Superior Court Docket Nos. 33 & 34.
[3] *Palmer v. State,* 2017 WL 2924195 (Del.).
[4] *Palmer v. State,* 2017 WL 2924195, *1 (Del.).

subjects responding and entering for short periods of time and then leaving.[5] To the officers, this observation was consistent with the allegation that the residence was a "stash house" for weapons and/or illegal drugs.[6]

9.      In November of 2015, the officers received another tip from another confidential informant that a black male named Isaiah Palmer lived at 311 West 29th Street and that his residence was being used as a "stash house" for other individuals' weapons, and that firearms were being stored in an exterior shed.[7]

10.      After obtaining a search warrant, on November 12, 2015, the Wilmington Police Department executed the warrant. When the police arrived, there were four individuals, apparently relatives of Palmer, in the residence, but he was not there. Palmer arrived later during the execution of the search warrant.[8]

11.      In a cubbyhole near the basement steps was a bag labeled "I-95 Enter" and within it were nine bundles of heroin containing .117 grams. Additional bags of heroin were found outside of the residence in recycling bins. Those bags were stamped with the phrase "Nike" and weighed 20.91 grams.[9] In total 2,581 bags of heroin was  seized.  In addition, five separate types of ammunition were found in the rear shed.  Palmer, along with the other family members, indicated that his

---

[5] Id.
[6] Id.
[7] Id.
[8] Id.
[9] Palmer v. State, 2017 WL 2924195, *1 (Del.); State v. Palmer, 2016 WL 2604692, *2 (Del.Super.).

bedroom was in the basement.[10] Inside the basement bedroom, police observed a bed, men's clothing and a dresser along with a box sitting on a table several feet past the foot of the bed. On top of the box, police found a loaded Taurus PT .45 caliber handgun with eight rounds of ammunition.[11]

## PALMER'S PENDING RULE 61 MOTION

12. On July 3, 2018, Palmer, with the assistance of counsel, filed the pending Rule 61 motion. In the subject motion, Palmer raises one claim. Palmer claims that trial counsel's failure to call Palmer's cousin Samuel Palmer as a witness at trial was ineffective and resulted in prejudice to Palmer.

13. Before making a recommendation, the record was enlarged and Palmer's trial counsel submitted an Affidavit responding to Palmer's claim, the State submitted a response, and Palmer was afforded an opportunity to submit a reply thereto.[12]

14. In order to prevail on an ineffective assistance of counsel claim, Palmer must meet the two-pronged *Strickland* test by showing that: (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[13]

---

[10] *Id.*

[11] *Palmer v. State*, 2017 WL 2924195, *1 (Del.); *State v. Palmer*, 2016 WL 2604692, *2 (Del.Super.).

[12] Super.Ct.Crim.R. 61(g).

[13] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

4

The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires him to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[14]

15. Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[15] Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance.[16] Moreover, there is a strong presumption that defense counsel's conduct constituted sound trial strategy.[17]

16. In considering post-trial attacks on counsel, *Strickland* cautions that trial counsel's performance should be reviewed from the defense counsel's perspective at the time decisions were being made.[18] It is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[19] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting efforts of

---

[14] *Id.* at 687-88, 694.

[15] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[16] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988); *Salih v. State*, 2008 WL 4762323, at *1 (Del. 2008).

[17] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[18] *Strickland*, 466 U.S. at 688-89.

[19] *Strickland*, 466 U.S. at 688-89.

hindsight. Second guessing or "Monday morning quarterbacking" should be avoided. [20]

17.    It is against this backdrop that Palmer's claim of ineffective assistance of counsel is considered.

18.    Trial counsel explained that his trial strategy was to establish reasonable doubt that Isaiah Palmer had knowing possession of the items seized.[21]  To that end, trial counsel presented numerous photographs through an investigator that tended to demonstrate Palmer's lack of proximity to the items.  Moreover, counsel established through police witnesses that the items were found in easily accessible areas in a very high crime and high drug dealing part of town.[22]

19.    Trial counsel explained that his decision not to call Samuel Palmer as a witness at trial was a tactical decision.[23]  Trial counsel explained that Samuel Palmer was with Isaiah Palmer on the night the search warrant was executed.  Samuel was also charged with drug and weapons offenses, although his charges were dismissed a couple weeks later.  Samuel went to the police station the night of the search warrant and gave a statement essentially stating all of the items seized

---

[20] *Strickland*, 466 U.S. at 688-89.

[21] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion.

[22] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion.

[23] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion; Petitioner Isaiah Palmer's Rule 61 Motion, Exhibit B, November 13, 2015 Interview of Samuel Palmer, at pgs. 2-3.

were his and that no one else knew about them.[24]

20.     However, there were significant problems with Samuel's statement to the police. Samuel did not accurately describe the items seized. He described the firearm correctly, but said it was "by the bed," which is not where it was found.[25] Samuel was not accurate about the heroin. He said there were only "probably over 100 bags" of heroin in the trashcan, when in fact there were over 2,400 bags of heroin in that trashcan.[26]

21.     Samuel could not describe how the heroin was packaged. He was correct about the "Nike" stamp on the heroin in the trashcan but did not know anything about the other heroin seized from the cubbyhole (which had a different stamp).[27]

22.     Samuel could not accurately describe the ammunition seized. He said he had some ammunition in the shed for a 9 mm firearm. He said he thought it was in a sock.[28] In actuality, the ammunition was in a white plastic bag and contained .45 caliber ammunition, .380 caliber ammunition, and .38 special ammunition.[29]

---

[24] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion; Petitioner Isaiah Palmer's Rule 61 Motion, Exhibit B, November 13, 2015 Interview of Samuel Palmer, at pgs. 2-3.

[25] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion.

[26] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion; Petitioner Isaiah Palmer's Rule 61 Motion, Exhibit B, November 13, 2015 Interview of Samuel Palmer, at pgs. 5-6.

[27] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion; Petitioner Isaiah Palmer's Rule 61 Motion, Exhibit B, November 13, 2015 Interview of Samuel Palmer, at pgs. 4-8, 11, 13 (Sam was not aware of anything illegal in the cubby hole).

[28] Petitioner Isaiah Palmer's Rule 61 Motion, Exhibit B, November 13, 2015 Interview of Samuel Palmer, at pg. 11.

[29] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion.

7

23. Finally, Samuel stated that Isaiah stayed upstairs in the house[30], when it was obvious that Isaiah stayed in the basement. In fact, Isaiah Palmer, along with the other family members present at the residence at the time of the search, indicated that his bedroom was in the basement.[31] A probation officer had also previously confirmed this by way of a home visit.[32]

24. The police did not believe Samuel; their assessment was that he was trying to "take the charges" for his cousin. As a result of Samuel's statement, he was charged with providing a false statement to police. The State would later enter a *nolle prosequi* on that charge and others.[33]

25. An additional problem with Samuel's statement is that it did not necessarily negate Isaiah Palmer's joint possession of the drugs, firearm and ammunition.[34]

26. Trial counsel wanted to avoid any potential evidence of joint possession so that a joint possession instruction would not be given.[35] Over trial counsel's objection, the court gave a joint possession instruction anyway. The jury was, therefore, instructed that two or more individuals could jointly possess items.[36]

---

[30]Petitioner Isaiah Palmer's Rule 61 Motion, Exhibit B, November 13, 2015 Interview of Samuel Palmer, at pg. 4.

[31]*Palmer v. State*, 2017 WL 2924195, *1 (Del.).

[32] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion; *See, Palmer v. State*, 2017 WL 2924195, *1 (Del.) (Palmer, along with other family members, indicated that his bedroom was in the basement.)

[33] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion.

[34] *Id.*

[35] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion.

[36] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion.

8

27. This joint possession issue was again raised by appellate counsel on direct appeal. Isaiah Palmer argued that a joint possession jury instruction should not have been given at trial as there was no evidence introduced at trial to suggest that Palmer's connection with drug-related activities was a joint endeavor involving any other residents of 311 West 29th Street. There was also no evidence that he was acting in concert with any other individuals who did not live in the residence.[37]

28. The Delaware Supreme Court held that the joint possession instruction was properly given.[38] The trial court gave the instruction because there were other people in the residence when the police arrived to do the search and there was evidence that other people had access to the residence. The Delaware Supreme Court ruled that the joint possession instruction was supported by the evidence at trial and properly given.[39] The Delaware Supreme Court noted that it was still the State's burden to prove that Isaiah Palmer possessed the drugs, but not to show that he had exclusive possession. The instruction still required the jury to find beyond a reasonable doubt that Isaiah Palmer possessed the drugs in order to find him guilty.[40]

29. Trial counsel stated that Samuel wanted to testify, and even came to counsel's office once or twice asking to meet with counsel. Trial counsel

---

[37] See, Palmer v. State, 2017 WL 2924195, *3 (Del.).
[38] Id.
[39] Id.
[40] Id.

9

explained to Isaiah and Isaiah's mother that counsel thought Samuel's testimony would backfire in front of the jury, and his lack of knowledge, especially about the ammunition and the heroin, would damage his credibility.[41]

30.     Counsel thought that calling Samuel as a witness at trial would lead the jury to the same conclusion the police reached:  that Samuel was trying to assume the responsibility to get his cousin Isaiah out of trouble and that Samuel should not be believed.[42]

31.     Given counsel's concerns with the inaccuracies of Samuel's statement, and the fact that the statement would not negate a theory of joint possession, counsel made the strategic decision that the cleaner and better option was not to call Samuel as a witness.  Instead trial counsel's strategy was to attack the elements of "knowing" and "possession" as to Isaiah.[43]

32.     Although trial counsel recognizes that he could have taken a different approach and called Samuel as a witness, he made a strategic decision not to do so.[44]

33.     The decision as to whether or not to call a witness and how to examine and/or cross-examine witnesses who are called are tactical decisions.[45]

---

[41] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion.
[42] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion.
[43] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion.
[44] Superior Court Docket No. 57- Affidavit of Trial Counsel in response to Rule 61 motion.
[45] *Outten v. State,* 720 A.2d 547, 557 (Del. 1998).

Great weight and deference are given to tactical decisions by the trial attorney. There is a strong presumption that defense counsel's conduct constituted sound trial strategy.[46]

34. The United States Supreme Court recognized that there are countless ways to provide effective assistance in any given case.[47] Even the best criminal defense attorneys would not defend a particular client in the same way. Consequently, defense counsel must be given wide latitude in making tactical decisions.[48] Counsel's representation must be judged by the most deferential of standards.[49]

35. Palmer's trial counsel made a reasonable strategic decision. Perhaps reasonable minds may differ and another attorney defending Palmer may have made a different decision in deciding whether or not to call Samuel as a witness. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting efforts of hindsight. Trial counsel must be given wide latitude in making tactical decisions. There is a strong presumption that counsel's conduct constituted sound trial strategy. Isaiah Palmer has not met his burden to overcome this strong presumption that trial counsel's conduct was reasonable and constituted sound trial strategy.

---

[46] *Strickland v. Washington,* 466 U.S. 668, 689 (1984); *Harrington v. Richter,* 131 S.Ct. 770 (2011).

[47] *Harrington v. Richter,* 131 S.Ct. 770, 787-788 (2011).

[48] *Harrington v. Richter,* 131 S.Ct. 770, 788-789 (2011).

[49] *Outten v. State,* 720 A.2d 547, 557 (Del. 1998); *Strickland v. Washington,* 466 U.S. 668, 689 (1984); *Harrington v. Richter,* 131 S.Ct. 770 (2011).

36. Finally, even if Isaiah Palmer had established that trial counsel's decision not to call Samuel was deficient (which he did not), he has not met the second prong of *Strickland* and established actual prejudice as a result thereof. Even if Samuel had testified, he clearly did not have any knowledge about the heroin in the cubbyhole, the quantity of the drugs in the recycle bins, and of the different types of ammunition stored in the shed. It is unlikely that the jury could have found that the drugs and ammunition he did not even know existed belonged to him, and to him alone. It is also unlikely that the jury would have believed that the gun in the basement bedroom was exclusively Samuel's and that he was the only one aware of its existence when, quite obviously, someone else must have placed the gun in the location where it was found since Samuel did not know the location of the gun. There was no prejudice from not calling him.

37. Isaiah Palmer failed to establish that his counsel's strategic decision not to call Samuel as a witness was deficient in any respect or that he was actually prejudiced as a result thereof. Palmer's claim raised in his Rule 61 motion is without merit.

38. Isaiah Palmer's request for an evidentiary hearing is denied. Following a full, comprehensive and thorough review of the evidentiary record, Palmer's allegations were either reasonably discounted as not supported by the record or not

12

material to a determination of Palmer's claim. It does not appear that an evidentiary hearing will aid in the resolution of this motion and is denied.

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be DENIED.

**IT IS SO RECOMMENDED.**

Commissioner Lynne M. Parker

cc: Prothonotary
Patrick J. Collins, Esquire

13